## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| DAVID HAHN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| AZIYO BIOLOGICS, INC., | ) | |
| MEDTRONIC, PLC, MEDTRONIC | ) | |
| USA, INC., and MEDTRONIC, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, DAVID HAHN, by and through counsel, as and for his complaint against Defendants, Aziyo Biologics, Inc., Medtronic, PLC, Medtronic USA, Inc., and Medtronic, Inc. (collectively, "Defendants"), alleges the following:

## INTRODUCTION

1. This action seeks to recover damages for the personal injuries suffered by DAVID HAHN, which were the direct and proximate result of the wrongful conduct of AZYIO BIOLOGICS, INC., MEDTRONIC, PLC, MEDTRONIC USA, INC. and MEDTRONIC, INC. in connection with the research, testing, design, development, manufacture, production, inspection, labeling, advertisement,

1

marketing, promotion, sale, and distribution of FiberCel Fiber Viable Bone Matrix ("FiberCel").

## PARTIES

2. Plaintiff, DAVID HAHN ("Plaintiff") is, and at all relevant times hereto was, a resident of the State of Indiana, residing in Michigan City, IN.

3. Defendant AZIYO BIOLOGICS, INC. ("Aziyo") is a Delaware corporation, whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Aziyo's principal place of business is located at 12510 Prosperity Drive, Suite 370, Silver Springs, Maryland 20904. Aziyo does business throughout the United States, including conducting regular business in Indiana

4. Aziyo sells a variety of medical products, including implantable electronic devices, orthopedic and spinal repair products, and soft tissue reconstruction products.

5. Upon information and belief, Aziyo developed, manufactured, marketed, promoted, distributed, supplied and/or sold FiberCel which was implanted into Plaintiff, and which is the subject of this Complaint.

6. Defendant MEDTRONIC, PLC is incorporated in Ireland, having its principal place of business at 20 Lower Hatch Street, Dublin, 2, Ireland. MEDTRONIC PLC's U.S. operational headquarters are located at 710 Medtronic

2

Parkway, Minneapolis, MN 55432-5604 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. MEDTRONIC, PLC is the parent company of MEDTRONIC, INC. MEDTRONIC, PLC does business throughout the United States, including conducting regular business in Indiana.

7.     Defendant MEDTRONIC USA, INC. is incorporated in Minnesota, having its principal place of business at 710 Medtronic Parkway, Minneapolis, MN 55432-5604 USA with a registered agent for service located at Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA. MEDTRONIC USA, INC. does business throughout the United States, including conducting regular business in Indiana.

8.     Defendant MEDTRONIC, INC. is incorporated in Minnesota, having its principal place of business at 710 Medtronic Parkway, Minneapolis, MN 55432-5604 USA with a registered agent for service located at Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA. MEDTRONIC, INC. does business throughout the United States, including conducting regular business in Indiana.

9.     MEDTRONIC, PLC, MEDTRONIC USA, INC. and MEDTRONIC INC. (collectively, "Medtronic") develop therapeutic and diagnostic medical

products, and is among the world's largest medical technology, services, and solutions companies.

10.    Upon information and belief, Medtronic was designated as the exclusive U.S. distributor of the FiberCel manufactured by Defendant Aziyo.

11.    At all times relevant, Medtronic distributed, supplied and/or sold FiberCel, which was implanted into Plaintiff, and which is the subject of this complaint.

12.    Defendants, at all times relevant to this lawsuit, manufactured, developed, designed, marketed, distributed, promoted, supplied and/or otherwise sold (directly or indirectly) FiberCel to various locations for use in surgeries requiring bone grafting, including to South Bend Memorial Hospital and the Beacon Health System where contaminated FiberCel was surgically implanted into Plaintiff David Hahn, causing him to suffer harm as described herein.


## JURISDICTION AND VENUE STATEMENT

13.    This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because complete diversity exists between the parties.

14.    At all times relevant to this action, the Defendants have been engaged, either directly or indirectly, in the business of manufacturing, marketing, selling,

and/or distributing FiberCel within the State of Indiana, with a reasonable expectation that the product would be used or consumed in said State, and thus regularly solicited or transacted business in this state.

15.     Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. In addition, the Defendants regularly conduct business in this district.


## COMMON FACTUAL ALLEGATIONS

### A. FiberCel Fiber Viable Bone Matrix

16.     FiberCel Fiber Viable Bone Matrix ("FiberCel") is made from human tissue consisting of cancellous bone particles with preserved cells, combined with demineralized cortical fiber.  It is engineered to act like organic tissue and is used as a bone void filler in both orthopedic and neurological procedures performed on the spine.

17.     FiberCel is made with donor tissue and growth factor cells.

18.     On June 20, 2019, Defendant Aziyo announced an exclusive distribution agreement with Defendant Medtronic, whereunder Aziyo would manufacture and supply FiberCel to Medtronic for distribution, which included both sales and marketing.

**B. FiberCel Recall Due to Tuberculosis Contamination**

19.     On June 2, 2021, the United States Food and Drug Administration issued an urgent voluntary recall of FiberCel, specifically three products from Donor Lot Number

NMDS210011: VMB9901, VBM9905, and VBM9910.

20.     Aziyo voluntarily recalled the FiberCel batch in response to reports of patients testing positive for Tuberculosis and post-surgical infections following surgical implantation of FiberCel.

21.     Tuberculosis ("TB") is a highly contagious infectious disease caused by bacteria known as Mycobacterium tuberculosis.  TB can impact several parts of the body through the lymphatic system, including the spine, lungs, kidneys, and brain.

22.     Once the body is exposed to TB bacteria, the bacteria must proliferate within the body for the individual to develop TB.  Within the context of a surgical site, the patient is already in an immunocompromised position, which in turn causes an increased likelihood of developing TB, which can be fatal.

23.     The recalled contaminated lot of FiberCel contained 154 units delivered to 20 states.

24.     Defendant Aziyo has acknowledged that at least one hospital reported post-surgical infections in seven of twenty-three patients that received FiberCel from Donor Lot No. NMDS210011.

25.     Several lawsuits have recently been filed nationwide as a result of individuals being infected with TB after being implanted with a FiberCel unit from the recalled Donor Lot.

26.     Defendant Aziyo's recall acknowledges that viruses and bacteria, including TB and bacteria thereof, can be transplanted  patients with the FiberCel product.

## C. Surgical Implantation of a Contaminated FiberCel Unit in Plaintiff and Resulting Severe Injury

27.     Plaintiff David Hahn underwent a two-level anterior cervical discectomy and fusion surgery on March 18, 2021, at South Bend Memorial Hospital in South Bend, Indiana.

28.     Plaintiff David Hahn's surgery included implantation of a FiberCel unit that was later identified as being from the recalled Donor Lot.

29.     Unbeknownst to Plaintiff or his physicians at the time of his surgery, the FiberCel unit implanted into Plaintiff was contaminated with TB.

30.     In June of 2021, Plaintiff's providers at South Bend Memorial Hospital notified Plaintiff that he had been implanted with one of the FiberCel units contaminated with TB.

31.     Plaintiff has subsequently tested positive for Spinal Tuberculosis.

32.     Plaintiff's Spinal Tuberculosis was caused by the contaminated and recalled FiberCel used in his operation.

33.     As a direct and proximate result of the implantation of contaminated FiberCel, Plaintiff is now forced to undergo a physically, mentally, and emotionally grueling daily treatment regimen to manage his TB diagnosis.

34.     Plaintiff will require continued medical monitoring now and into the future in order to monitor Plaintiff's health as it relates to the ongoing and serious nature of his TB diagnosis.

35.     Plaintiff may in the future experience ongoing symptoms of TB disease, in addition to other injuries and harm that he may suffer as a result of his tuberculosis diagnosis.

36.     Plaintiff would not have suffered from tuberculosis had Defendants not created and distributed a product contaminated with tuberculosis.

37.     Plaintiff has further experienced significant, life-altering side effects from the extensive TB treatments, which has caused a cascade of related health complications.

38.     As a direct and proximate result of Plaintiff's exposure to Defendants' contaminated FiberCel product used in his spinal surgery, Plaintiff has suffered and continues to suffer from severe pain and discomfort, emotional distress, the loss of daily functions, and economic loss, including but not limited to, present and future medical expenses, all of which are a direct result of Defendants' liability producing conduct.

### COUNT ONE – Defendant Aziyo
### Strict Products Liability – Manufacturing Defect

39.     Plaintiff incorporates the foregoing paragraphs (No. 1-38) of this Complaint as though the same were set forth at length herein.

40.     At all times herein mentioned, Defendant Aziyo designed, manufactured and tested, the contaminated FiberCel units.

41.     In June 2021, Defendants recalled FiberCel units that came from the contaminated Donor Lots.

42.     Defendants' quality control should have, but failed to, discover that several of its Donor Lots were contaminated with tuberculosis.

43.     At all times herein mentioned, the contaminated Fibercel was defective in its manufacture in that FiberCel units were contaminated with tuberculosis, which

in turn transplanted that serious and potentially deadly illness to patients, including Plaintiff, who was implanted with one of the contaminated FiberCel units.

44.     Being contaminated with tuberculosis, the FiberCel unit manufactured by Defendants and implanted into Plaintiff was unsafe, defective, and unreasonably dangerous before it left Defendant Aziyo's possession, and was in the same condition when implanted into Plaintiff as when Defendant Azyio placed it into the stream of commerce.

45.     Based on its industry and readily available scientific knowledge at the time of manufacturing and testing of the contaminated FiberCel units, Defendant Aziyo should have reasonably foreseen that FiberCel units contaminated with tuberculosis were unsafe, defective, and unreasonably dangerous to FiberCel users like Plaintiff.

46.     At all times herein mentioned, ordinary consumers, including Plaintiff, who was implanted with FiberCel, could not and would not have reasonably foreseen the defective contamination of FiberCel units with tuberculosis.

47.     At all times herein mentioned, the aforementioned FiberCel was implanted into Plaintiff in a manner which was reasonably foreseeable to the Defendants.

48.     As a direct and proximate result of Plaintiff's use of the defective, unsafe, and unreasonably dangerous FiberCel units as Defendants' manufactured,

tested, and placed them into the stream of commerce, Plaintiff contracted tuberculosis, which has caused him to suffer harm, damages, and economic loss, and Plaintiff will continue to suffer harm into the foreseeable future.

**COUNT TWO – Defendant Aziyo**
**Products Liability – Design Defect**

49.     Plaintiff incorporates the foregoing paragraphs (1-48) of this Complaint as though the same were set forth at length herein.

50.     At all times material to this lawsuit, Defendant Aziyo were engaged in the business of designing, manufacturing, testing, and placing into the stream of commerce FiberCel units for use by members of the public.

51.     Defendants designed the FiberCel product, as the manufacturing and testing procedures therefor, which was surgically implanted into Plaintiff's body.

52.     The FiberCel that Defendants designed, manufactured, and tested reached Plaintiff without substantial change in its condition when it was implanted into his body during operation.

53.     The FiberCel implanted into Plaintiff's body, being contaminated with tuberculosis, was dangerous and defective when it entered into the stream of commerce and when used by Plaintiff.

54.     Defendants owe a duty to the general public, and specifically to Plaintiff, to exercise reasonable care in the design, study, development, manufacture, and testing distribution of FiberCel.

55.     Defendants breached said duty by failing to exercise reasonable care in the design of FiberCel, FiberCel manufacturing procedures, and the FiberCel testing procedures because, as designed, manufactured, and tested, FiberCel units were capable of causing serious personal injuries such as those suffered by Plaintiff during the foreseeable use of FiberCel.

56.     The FiberCel implanted into Plaintiff was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use.  The FiberCel product was dangerous to an extend beyond that which could reasonably be contemplated by Plaintiff.

57.     The FiberCel implanted into Plaintiff was defective at the time it was Defendant Aziyo placed it into the stream of commerce.

58.     Plaintiff was a person who would reasonably be expected to use FiberCel.

59.     Defendants' failure to exercise reasonable care in the design of the FiberCel product, the design of manufacturing procedures for said product, and the design of testing procedures for said product was a proximate cause of Plaintiff's injuries and damages.

60.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to FiberCel, and suffered the injuries and damages set forth hereinabove.

## COUNT THREE – All Defendants
### Products Liability – Failure to Warn

61.     Plaintiff incorporates the foregoing paragraphs (1-60) of this Complaint as though the same were set forth at length herein.

62.     Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of FiberCel to foreseeable users, including Plaintiff.

63.     Defendants knew or reasonably should have known that the warnings provided to users of FiberCel regarding the risks associated with its use were incorrect and/or inadequate in at least the following material ways:

a. FiberCel was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects;

b. Defendants failed to include adequate warnings that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of FiberCel, including, among other things, development of tuberculosis;

c. Defendants failed to immediately warn patients and physicians after they learned that their product was contaminated with tuberculosis; and

d. Otherwise failed to provide adequate warnings.

64.     By failing to warn Plaintiff and Plaintiff's physicians of the adverse health risks associated with FiberCel, Defendants breached their duty of care and safety to Plaintiff.

65.     Defendants, as manufacturers and distributors of human tissue products, are held to the level of knowledge of an expert in that field; and further, Defendants knew, or should have known, that any warnings they did distribute regarding the risks of a contaminated product causing tuberculosis and associated injuries and complications following the implantation of FiberCel were inadequate.

66.     Plaintiff did not have the same expert knowledge as Defendants, and no adequate warning of other clinically relevant information and date was communicated to Plaintiff or Plaintiff's physicians.

67.     Defendants further have a continued duty to provide consumers, including Plaintiff and Plaintiff's physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with FiberCel, as it came or could have become available to Defendants.

68.     Defendants marketed, promoted, distributed, and sold an unreasonably dangerous and defective human tissue product, FiberCel, to health care providers empowered to implant FiberCel into consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants mislead the medical community about the risk and benefit balance of FiberCel, which resulted in severe injury to Plaintiff.

69.     Defendants knew or should have known that consumers, including Plaintiff specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures to properly warn.

70.     Defendants further had an duty to provide Plaintiff and Plaintiff's physicians with adequate, clinically relevant information, data, and warnings regarding the adverse health risks associated with the implantation of FiberCel.

71.     By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information, data, and warnings regarding the adverse health risks associated with the implantation of FiberCel, Defendants breached their duty of reasonable care and safety.

72.     Defendants' performed the above-described actions with reckless disregard of the life and safety of Plaintiff and the general public.

73.     Defendants above-described breaches of their duty of reasonable care ,
in failing to provide adequate warnings, was a proximate cause of Plaintiff's
tuberculosis infection, and thus, his injuries and damages set forth herein.


## COUNT FOUR – All Defendants
### Ordinary Negligence

74.     Plaintiff hereby incorporates the foregoing paragraphs (1-73) of this
Complaint as though the same were set forth at length herein.

75.     Defendants owed a duty to Plaintiff David Hahn to exercise reasonable
care is designing, researching, manufacturing, marketing, supplying, promoting,
sale, testing, quality, assurance, quality control, and distribution of FiberCel into the
stream of commerce, including a duty to ensure that the FiberCel would not cause
adverse harmful effects to Plaintiff and others who used it.

76.     Defendants failed to exercise reasonable care in the designing,
researching, manufacturing, marketing, supplying, promoting, sale, testing, quality
assurance, quality control and distribution of FiberCel units contaminated with
tuberculosis.

77.     Defendants knew or should have known that those individuals who
used the defective FiberCel were at risk for suffering harmful effects from it,
including but not limited to, tuberculosis, as well as other severe injuries which are

permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

78.     Defendants were negligent in designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and sale of FiberCel units contaminated with tuberculosis.

79.     The negligence of Defendants, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

  a.  Designing manufacturing, producing, creating, and/or promoting FiberCel without adequately, sufficiently, or thoroughly testing the FiberCel units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

  b.  Not conducting a sufficient quality control testing program to determine whether or not the subject FiberCel was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

  c.  Failing to adequately and properly obtain and review complete donor medical history;

  d.  Negligently failing to timely recall their dangerous and defective FiberCel lots at the earliest date at which it became known that certain FiberCel Donor Lots were, in fact, dangerous and defective;

e. Negligently manufacturing FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies; and

f. Failing to warn individuals who were using the product of the risks of contracting tuberculosis;

80. Defendants knew or should have known that consumers, such as Plaintiff, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendants' failure to exercise ordinary care as set forth above.

81. Defendants' negligence was the direct and proximate cause of Plaintiff David Hahn's physical, mental, emotional injuries and harm, and economic loss.

82. By reason of the foregoing, Defendants are liable to Plaintiff for all of his injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future.

## COUNT FIVE – All Defendants
### Breach of Implied Warranty – I.C. 26-1-2-314

83. Plaintiff incorporates the foregoing paragraphs (1-82) of this Complaint as though the same were set forth at length herein.

84. Defendants are in the business of designing, manufacturing, supplying, selling, and placing into the stream of commerce certain goods, including FiberCel.

85.     By placing FiberCel into the stream of commerce, Defendants impliedly warranted that it was merchantable, fit, and safe for its intended use.

86.     The FiberCel placed into the stream of commerce by Defendants and implanted into Plaintiff was contaminated, leading those persons who received FiberCel implants to develop tuberculosis, including Plaintiff, and accordingly, was not fit, safe, or merchantable for its intended use.

87.     The contamination in the FiberCel, manufactured, supplied, and placed into the stream of commerce by Defendants was present at the time the FiberCel units left Defendants' control and at the time it was implanted into Plaintiff as part of his spinal operation.

88.     Defendants breached the implied warranty for FiberCel because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries suffered by Plaintiff David Hahn, including his development of tuberculosis.

89.     Plaintiff David Hahn was a foreseeable user of the FiberCel designed, manufactured, and placed into the stream of commerce by Defendants.

90.     By reason of the foregoing, Defendants are liable to Plaintiff David Hahn for his injuries, harm, damages (economic and non-economic) in an amount to be determined at trial.

## COUNT SIX – All Defendants
### Breach of Express Warranty – I.C. 26-1-2-313

91.     Plaintiff hereby incorporates the foregoing paragraphs (1-90) of this Complaint as though the same were set forth at length herein.

92.     At all times mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that FiberCel is safe, effective, fit, and proper for its intended use.

93.     Plaintiff and Plaintiff's physicians utilized FiberCel relying upon said warranties.

94.     Defendants' own promotion states that FiberCel is processed in sterile conditions, and is screened for bacteria and communicable disease.

95.     In utilizing FiberCel, Plaintiff relied on the skill, judgment, representation, and foregoing express warranties of the Defendants, all of which were false in that FiberCel is unsafe and unfit for its intended uses.

96.     As a result of the above-mentioned breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

## ALLEGATIONS SUPPORTING PUNITIVE DAMAGES
## UNDER I.C. 34-51-3

97.     Plaintiff hereby incorporates the foregoing paragraphs (1-96) of this Complaint as though the same were set forth at length herein.

98.     Plaintiff is further informed and believes that Defendants' misconduct, as previously outlined herein, constituted a conscious disregard for, and reckless indifference to, the rights and safety of other persons, including Plaintiff David Hahn, that had a great probability of causing substantial harm including, but not limited to, exposing Plaintiff and other recipients of FiberCel to tuberculosis, a potentially deadly infectious disease.

99.     Plaintiff is further informed and believes that Defendants engaged in conduct with respect to the contaminated FiberCel units which was a legal cause of loss, damages, injuries, and harm to Plaintiff, and which exposed Plaintiff and other recipients of the contaminated FiberCel units to serious complications, including the diagnosis of tuberculosis in Plaintiff's spine, and treatment related side effects.

100.    Given the serious consequences and their expertise in their industry, Defendants' actions and inactions leading to the contamination of the FiberCel product were done with a reckless disregard and indifference for the safety of the Plaintiff and the general public, and not the result of mere mistake or error in judgment.

101.   The Defendants' reckless disregard and indifference for the safety of Plaintiff was the direct and proximate cause of Plaintiff's injuries and damages.

102.   As a direct and proximate result of the Defendants' reckless disregard for the safety of Plaintiff, the Plaintiff has suffered and will continue to suffer damages as set forth above.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, David Hahn, prays this honorable Court for relief against Defendants, jointly and severally, as follows:

a.   Compensatory damages exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all of his past, present, future pain and suffering;

b.   Special damages, exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all of his injuries and damages, including, but not limited to, past, present, and future medical expenses;

c.   Punitive and/or exemplary damages to Plaintiff, under the limitations set forth under Indiana State law, for the reckless acts of the Defendants, in demonstrating a conscious disregard for and reckless indifference to the safety and

welfare of Plaintiff and the general public, in amount sufficient to punish Defendants and deter future similar conduct by Defendants and other similarly situated entities.

d.      An order to establish a medical monitoring protocol for Plaintiff to monitor his health;

e.      Attorneys' fees, expenses, and costs of this action;

f.      Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

g.      Such further relief as this Court deems necessary, just, and proper.


Respectfully Submitted,

**LEONAS LAW OFFICES**

/s/Theodore Leonas III
 Theodore Leonas III




Theodore Leonas III, (Atty. No. 34679-45)
Theodore S. Leonas, Jr. (Atty. No. 15215-45)
Elizabeth J. Leonas (Atty. No. 35884-45; Admission to N.D. Indiana pending)
Leonas Law Offices
101 W. 2nd St., Suite 260
Michigan City, Indiana 46360
Tel. 219-879-1609
Fax. 219-879-1610
tl@leonaslawoffices.com

tsl@leonaslawoffices.com
ejl@leonaslawoffices.com